UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE COMMISSION
100 F Street, N.E.
Washington, D.C. 20549,

                Plaintiff,

v.

MONTY FU,

                Defendant.

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges that:

## NATURE OF THE ACTION

1.   From 1985 through December 2002, Syncor International Corporation ("Syncor"), a provider of radiopharmaceutical products and services, violated the books and records and internal controls provisions of the Foreign Corrupt Practices Act ("FCPA") (Sections 13(b)(2)(A) and 13(b)(2)(B) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(2)(B)]) in connection with certain payments made through its wholly-owned Taiwanese subsidiary, Syncor Taiwan, Inc. ("Syncor Taiwan"). During the seventeen-year time period, Syncor, through Syncor Taiwan, paid commissions and referral fees to doctors employed by private and public hospitals in Taiwan. The total payments to doctors averaged over $30,000 per year from 1989 through at least 1993 and increased to average over $170,000 per year from at least 1997 through the first half of 2002. Syncor Taiwan improperly recorded

the payments in its accounting books and records as "Advertising and Promotions" expenses. Syncor Taiwan's books and records were then consolidated into the books and records of its parent, Syncor, and included in financial statements filed with the Commission.

2.  Defendant Monty Fu ("Fu"), was Syncor's founder and, at various times, Syncor's Chief Executive Officer and Chairman of Syncor's board of directors. As described below, Fu had the authority to maintain compliance with existing internal controls, and to implement additional internal controls designed to comply with the FCPA's books and records and internal controls provisions, yet failed to do so.

3.  By engaging in such conduct, defendant violated Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)] and Exchange Act Rule 13b2-1 thereunder [17 C.F.R. § 240.13b2-1], and aided and abetted Syncor's books and records and internal controls violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(2)(B)] in violation of Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)].

4.  Unless restrained and enjoined by this Court, defendant will continue to engage in transactions, acts and practices that violate these provisions of the federal securities laws. The Commission seeks a permanent injunction against future violations and other relief requested in this Complaint.

## JURISDICTION

5.  This Court has jurisdiction over this action pursuant to Sections 21(d)(1), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d)(1), (e), and 78aa].

## DEFENDANT

6.   Defendant Monty Fu, at all relevant times a resident of Chatsworth, California, founded Syncor in 1974. He held a variety of positions within Syncor, including as Chief Executive Officer from 1985 to 1989 and as Chairman of its board from 1985 to November 6, 2002, when he was placed on paid leave until his resignation in December 2002. From at least 1996 through early 2002, Fu also served as Director, Asia Region of Syncor Overseas Ltd., the holding company of Syncor's foreign subsidiaries.

## OTHER RELEVANT ENTITIES

7.   Syncor, founded in 1974, was a Delaware corporation with its headquarters in Woodland Hills, California. Syncor was a provider of radiopharmaceutical products and services both in the United States and, through various wholly and partially owned subsidiaries, in 18 foreign countries. At all relevant times, Syncor's common stock was registered with the Commission pursuant to Section 12(g) of the Exchange Act and was listed on the NASDAQ National Market. On January 1, 2003, Syncor became a wholly owned subsidiary of Cardinal Health, Inc. through a stock-for-stock acquisition.

8.   Syncor Taiwan, Inc. was established at Fu's direction in 1985 as a wholly-owned subsidiary operating in Taiwan. At all relevant times, Syncor Taiwan's financial results were included in the consolidated financial statements of Syncor.

## FACTS

A. **Syncor Taiwan's Payment of Commission and Referral Fees**

9. From 1985 through 1996, Syncor Taiwan's business consisted chiefly of selling radiopharmaceuticals and medical equipment to end-users. Syncor Taiwan undertook in 1996 to establish medical imaging centers in conjunction with public and private hospitals which would generate management fees for Syncor Taiwan.

10. Commencing in or around 1985 and continuing through December 2002, Syncor Taiwan made payments to doctors at private and public hospitals, for the purpose of influencing the doctors' decisions to purchase radiopharmaceutical products from Syncor Taiwan and to refer patients to Syncor Taiwan's medical imaging centers. The total payments to doctors averaged over $30,000 per year from 1989 through at least 1993 and increased to average over $170,000 per year from at least 1997 through the first half of 2002.

11. From approximately 1985 onward, these payments included commissions to doctors who made the purchasing decisions for the nuclear medicine departments of their respective hospitals. Beginning in or about 1997, the commission payments included "medicine fees" which compensated doctors for prescribing medicine purchased, or for using component parts purchased, from Syncor Taiwan for use in tests conducted at a medical imaging center. Commissions typically were based on a percentage (between 10% and 20%) of sales transacted, and typically took the form of a cash payment that was hand-delivered by Syncor Taiwan personnel.

4

12. Also beginning in or about 1997 and continuing through September 2002, Syncor Taiwan paid referral fees to doctors at private and public hospitals who referred patients to medical imaging centers owned and operated by Syncor Taiwan. These referral fees typically were based on a percentage (between 3% and 5%) of the service fees payable to each medical imaging center from the patients referred, and typically took the form of a cash payment that was hand-delivered to the referring doctor by a bookkeeper at the center after funds had been wire-transferred by Syncor Taiwan to the center for that purpose.

**B.    Syncor Taiwan's Lack of Sufficient
Internal Controls and Misrecordation of the Payments**

13. Under the FCPA, Syncor was required to design and implement a system of internal controls to ensure that its wholly-owned subsidiary complied with the FCPA's books and records and internal controls provisions. It failed to do this with respect to Syncor Taiwan, which circumvented existing internal controls and failed to implement other controls designed to detect and prevent non-compliance at the company.

14. Syncor's internal accounting policy manual in use from at least 1993, a copy of which was provided to Syncor Taiwan, specified that the "Advertising and Promotions" account on its books and records was to include local and national advertising, convention displays, convention expenses and convention space rental. The manual designated selling-related expenses for other accounts.

15. An employee handbook issued by Syncor in 2001 under Fu's signature specified that "[n]o false or misleading entries shall be made in the books and records of the Company for

any reason, . . . [and] [n]o payment on behalf of the Company shall be approved without adequate supporting document or made with the intention or understanding that any part of such payment is to be used for any purpose other than that described by the document supporting the payment."

16. At various times during the relevant period, Syncor Taiwan improperly recorded the commissions and referral payments paid to the doctors at public and private hospitals as "Advertising and Promotions" expenses. These entries were rolled up into Syncor's consolidated books and records.

### C. Fu's Violative Conduct

17. Throughout the relevant time period, Fu had the authority to implement a system of internal controls in the subsidiary sufficient to ensure that transactions were executed in accordance with management's general or specific authorization and that transactions were recorded in a manner that fairly reflected the transactions. His authority derived from the various positions he held throughout the relevant time period. Fu directed the creation of Syncor Taiwan in 1985. Fu's brother was country manager for Taiwan. Fu's brother, who was promoted to various positions in the Asia region during the relevant period, consulted and, at times, reported to Fu about Syncor Taiwan's operations throughout the relevant period, including the making of payments to doctors.

18. At all relevant times, Fu was aware that Syncor Taiwan was paying commissions and, commencing in 1997, referral fees to doctors at private and public hospitals in Taiwan.

19. In 1994, in connection with the outside auditor's audit of Syncor's 1993 financial statements, Syncor's then chief executive officer and president inquired about the nature of certain payments by Syncor Taiwan and cautioned Fu that Syncor could not make payments for the purpose of influencing doctors' decisions to purchase or use Syncor's products and services. As a result, Fu knew or was reckless in not knowing that the commissions and referral fees were improperly recorded on the books and records of Syncor Taiwan and, thus, of Syncor.

20. Nonetheless, Fu failed to maintain compliance with existing internal controls and also failed to implement additional internal controls to determine whether payments by Syncor Taiwan complied with Syncor's management's specific directive and more generally with the FCPA.

## FIRST CLAIM

### *Violations of Section 13(b)(5) of the Exchange Act and Rule 13b2-1*

**(Direct violations of books and records and internal controls provisions)**

21. Paragraphs 1 through 20 are realleged and incorporated by reference.

22. By engaging in the conduct described above, Fu knowingly failed to implement a system of internal accounting controls sufficient to provide reasonable assurance that transactions were recorded in Syncor's books and records in accordance with Section 13(b)(2)(A) of the Exchange Act.

23. Fu thereby caused the commissions and referral fees to be improperly recorded as "Advertising and Promotions" expenses on the books and records of Syncor Taiwan and Syncor.

24. By virtue of the conduct described above, defendant Fu violated Section 13(b)(5) of the Exchange Act and Rule 13b2-1 thereunder.

## SECOND CLAIM

### *Aiding and Abetting Violations of Section 13(b)(2)(A) of the Exchange Act*

**(Aiding and Abetting Syncor's Books and Records Violations)**

25. Paragraphs 1 through 24 are realleged and incorporated by reference.

26. As described above, Syncor, by and through its foreign subsidiary in Taiwan, failed to make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflected the transactions and dispositions of its assets.

27. By virtue of the conduct described above, Syncor violated Section 13(b)(2)(A) of the Exchange Act.

28. As described above, defendant Fu knowingly provided substantial assistance to Syncor in connection with Syncor's violations of the aforesaid provisions.

29. By virtue of the conduct described above, and pursuant to Section 20(e) of the Exchange Act, defendant Fu aided and abetted Syncor's violations of Section 13(b)(2)(A) of the Exchange Act.

## THIRD CLAIM

### *Aiding and Abetting Violations of Section 13(b)(2)(B) of the Exchange Act*

**(Aiding and Abetting Syncor's Internal Controls Violations)**

30. Paragraphs 1 through 29 are realleged and incorporated by reference.

31. As described above, Syncor, by and through its foreign subsidiary in Taiwan, failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that: (i) transactions were executed in accordance with management's general or specific authorization; and (ii) transactions were recorded as necessary to permit preparation of financial statements in conformity with GAAP or any other criteria applicable to such statements, and to maintain accountability for its assets.

32. By virtue of the conduct described above, Syncor violated Section 13(b)(2)(B) of the Exchange Act.

33. As described above, defendant Fu knowingly provided substantial assistance to Syncor in connection with Syncor's violations of the aforesaid provision.

34. By virtue of the conduct described above, and pursuant to Section 20(e) of the Exchange Act, defendant Fu aided and abetted Syncor's violations of Section 13(b)(2)(B) of the Exchange Act.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff respectfully requests that this Court enter a Final Judgment against defendant Monty Fu:

1. permanently enjoining him, pursuant to Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)], from violating, directly or indirectly, Section 13(b)(5) of the Exchange Act and Rule 13b2-1 thereunder, and from aiding and abetting violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act; and

    2.    ordering him, pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], to pay civil penalties; and

    3.    granting such other relief as this Court deems appropriate.

Dated: 9/28, 2007

Respectfully submitted,

/s/ Jordan A. Thomas

Jordan A. Thomas (Bar No. 452886)
Scott W. Friestad
Robert B. Kaplan
Nina B. Finston (Bar No. 431825)
Stephen G. Yoder

Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-4030
Tel: (202) 551-4475 (Thomas)
Fax: (202) 772-9245

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | MONTY FU |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT (IN U.S. PLAINTIFF CASES ONLY) __88888__ NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) Securities and Exchange Commission, Jordan A. Thomas, 100 F Street, N.E., Washington, DC 20549-4030, (202) 551-4475 | ATTORNEYS (IF KNOWN) |

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

- ◉ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A. Antitrust**
- ☐ 410 Antitrust

○ **B. Personal Injury/Malpractice**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

◉ **E. General Civil (Other)** OR ○ **F. Pro Se General Civil**

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☒ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Violations of 15 U.S.C. 78m(b)(2)(A), 78m(b)(2)(B), 15 U.S.C. 78m(b)(5), 15 U.S.C.78t(e) and 17 C.F.R. 240.13b2-1

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☒  NO ☐   If yes, please complete related case form.

DATE 9/28/07   SIGNATURE OF ATTORNEY OF RECORD  _[signature]_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE COMMISSION,
100 F Street, N.E.
Washington, D.C. 20549,

                     Plaintiff,

     vs.

MONTY FU,

                     Defendant.

C.A. No.

## CONSENT OF DEFENDANT MONTY FU

1. Defendant Monty Fu ("Defendant") waives service of a summons and the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2. Without admitting or denying the allegations of the complaint (except as to personal and subject matter jurisdiction, which Defendant admits), Defendant hereby consents to the entry of the final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

    (a)    permanently restrains and enjoins Defendant from: (i) violating Section 13(b)(5) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78m(b)(5)] and Exchange Act Rule 13b2-1 thereunder [17 C.F.R. § 240.13b2-1]; and (ii) aiding and abetting violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(2)(B)]; and

1

(b) orders Defendant to pay a civil penalty in the amount of $75,000.00 under Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

3. Defendant agrees that he shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to any insurance policy, with regard to any civil penalty amounts that Defendant pays pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors. Defendant further agrees that he shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any penalty amounts that Defendant pays pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof are added to a distribution fund or otherwise used for the benefit of investors.

4. Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

5. Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

6. Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

7. Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

8. Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

9. Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions. Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

10. Consistent with 17 C.F.R. 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding. Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this

action, Defendant understands that he shall not be permitted to contest the factual allegations of the complaint in this action.

11.     Defendant understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegation in the complaint or order for proceedings." 17 C.F.R. § 202.5. In compliance with this policy, Defendant agrees: (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; and (ii) that upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint. If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

12.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

13.     Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

14. Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated: 16 JUL 2007

_____
Monty Fu

On July 16th, 2007, _Monty Fu_, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.

_____
Notary Public
Commission expires: PRESIDENTIAL COMMISSIONS DO NOT EXPIRE

Charles Jess
Consul of the United States
of America

American Consulate General
Shanghai   China

Approved as to form:

_____
Eugene I. Goldman, Esq.
McDermott, Will & Emery
600 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 756-8057
Attorney for Defendant

_____
Gordon A. Greenberg, Esq.
McDermott, Will & Emery
2049 Century Park East, 38th Floor
Los Angeles, C.A. 90067
(310) 551-9398
Attorney for Defendant

5